UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA C,[1]<br><br>          Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>          Defendant. | Case No.: 21cv1161-LR<br><br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 13]** |

On June 24, 2021, Eva C. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits. (ECF No. 1.) Now pending before the Court is the parties' "Joint Motion" seeking judicial review. (ECF No. 13 ("J. Mot.").) For the reasons discussed below, the Court **ORDERS**

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

[2] Plaintiff named Andrew Saul, who was the Acting Commissioner of Social Security when Plaintiff filed her Complaint on June 24, 2021, as a Defendant in this action. (See ECF No. 1 at 1.) Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

that judgment be entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND

**A.**  **Previous Proceedings**

On May 29, 2013, Plaintiff filed an application for social security disability benefits alleging disability beginning on August 3, 2012.  (ECF No. 8 ("AR")[3] at 219–20; see also id. at 20.)  On June 14, 2013, Plaintiff was found disabled beginning on August 3, 2012.[4]  (Id. at 20.)  On October 17, 2016, a determination was made that Plaintiff's disability ended on October 1, 2016.  (Id.)  After the determination was upheld upon reconsideration, Plaintiff requested an administrative hearing before an Administrative Law Judge  ("ALJ"), and a hearing was held.  (Id.)  As reflected in his September 26, 2018 hearing decision, the ALJ found that medical improvement occurred on October 1, 2016, and that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2016, through the date of the decision.[5]  (Id. at 90.)

---

[3]  "AR" refers to the Administrative Record filed on September 9, 2022.  (ECF No. 8.)  The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[4]  It was determined that Plaintiff had the following medically determinable impairment: endometrial cancer.  (Id. at 22, 84.)

[5]  The ALJ also stated the following in his written decision:

> At the conclusion of the hearing the undersigned closed the record based upon the representations of counsel.  On July 17, 2018, without any leave from the undersigned, counsel submitted a "Physical Capacities Evaluation" dated July 9, 2018 by Pooya Javidan, M.D., without any contemporaneous treatment records in support.  That document was not made part of the record and has not been considered by the undersigned.

(Id. at 82.)

Plaintiff filed a request for review of the decision, (id. at 20), and on April 24, 2020, the Appeals Council vacated the hearing decision and remanded the case, stating the following:

> The hearing decision addressed that the claimant stated that she had used a cane for five years, but did not make a finding as to the claimant's need for an assistive device for ambulation. Treatment records from Kaiser Permanente dated May 17, 2018 noted that the claimant used a walking cane and that her left quadriceps weakness was stable. Use of an assistive device, including a cane or walker, was stated to be part of the claimant's treatment plan according to Dr. Pooya[6] on June 4, 2018. On June 15, 2018, Miguel Alejandro Casillas, M.D, opined that the claimant was limited to less than sedentary work, but also required a cane to ambulate. The hearing decision, page 6, reflects that little weight was given to Dr. Casillas' opinion, which included use of a cane, because an examination in June 2018 showed a normal gait, but the decision does not contain an assessment of these countervailing records. Further consideration of the claimant's need for an assistive device and of Dr. Casillas' opinion is needed.

(Id. at 97 (internal citations omitted).) The Appeals Council specifically instructed the ALJ to: (1) update the record with additional medical evidence, including "records from the claimant's treating and nontreating sources, and if needed a consultative physical status examination, and medical source statements about what the claimant can still do despite the impairments"; (2) "[f]urther evaluate the need for an assistive device for ambulation"; (3) consider Plaintiff's maximum RFC "during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations", and evaluate treating, non-treating, and non-examining source opinions; and (4) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (Id. at 97–98.)

---

[6] The Court notes that the name of the physician is "Pooya Javidan." (See id. at 803.) "Pooya" appears to be the physician's first name.

**B.     Proceedings After Remand**

On October 20, 2020, the ALJ held a hearing on Plaintiff's claim. (Id. at 20, 35–60.) Plaintiff appeared at the hearing with counsel and a Spanish interpreter, and testimony was taken from her and a vocational expert ("VE"). (Id. at 35–60.) As reflected in his November 12, 2020, hearing decision, the ALJ found that Plaintiff's disability ended on October 1, 2016, and Plaintiff had not become disabled since that date. (Id. at 29.) The ALJ's decision became the final decision of the Commissioner on April 27, 2021, when the Appeals Council denied Plaintiff's request for review. (Id. at 1–5.) This timely civil action followed. (See ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2016. (AR at 22.) At step two, the ALJ found that since October 1, 2016, Plaintiff had the following severe impairments: obesity, degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and urinary urge incontinence. (Id.) At step three, the ALJ found that since October 1, 2016, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 23.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform less than full range of light work as defined in 20 CFR 404.1567(b). Specifically, she can lift and carry 20 pounds occasionally and ten pounds frequently; sit for six hours out of eight hours; and stand/walk for six hours out of eight-hours. She should never climb ladders, ropes or scaffolds; she can frequently balance; and occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. She should avoid concentrated exposure to unprotected heights and moving and dangerous machinery; and she should have ready access to a restroom defined as within five minutes or less.

(Id. at 23–24.)

At step four, the ALJ accepted and cited the VE's testimony that Plaintiff was not capable of performing her past relevant work as a home healthcare aide. (Id. at 27–28; see also id. at 42–43.) Alternatively, at step five, based on the VE's testimony, the ALJ found that a hypothetical person with Plaintiff's RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as cashier, marker, and produce weigher. (Id. at 28–29; see also id. at 43–44.) The ALJ then found that Plaintiff was not disabled. (Id. at 29.)

### III.  DISPUTED ISSUE

As reflected in the parties' Joint Motion, Plaintiff is raising the following issue as the ground for reversal and remand—whether the ALJ erred in rejecting the opinions of Plaintiff's treating physicians that she needs a cane to ambulate. (J. Mot. at 2.)

### IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)). In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision. Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the

ALJ on a ground upon which [he or she] did not rely." Revels, 874 F.3d at 654 (internal quotation omitted).

## V. RELEVANT MEDICAL RECORDS AND TESTIMONY

### A. Dr. Casillas

On June 15, 2018, Dr. Miguel Casillas filled out a "Physical Capacities Evaluation" form. (AR at 801.) He determined that Plaintiff can sit for five hours, stand for two hours, and walk for one hour during an eight-hour day. (Id.) He also concluded that Plaintiff can frequently lift up to five pounds, occasionally lift up to ten pounds, never lift more than twenty pounds, frequently carry up to five pounds, occasionally carry up to twenty pounds, and never carry more than twenty pounds. (Id.) Dr. Casillas further stated that Plaintiff can grasp, push, and pull, perform fine manipulative actions with both hands, and perform "repetitive movements such as pulling and pushing" with her right, but not with her left foot. (Id.) Additionally, Dr. Casillas determined that Plaintiff can frequently bend and reach, but cannot squat, crawl, or climb. (Id.) Finally, Dr. Casillas stated that Plaintiff requires a cane to ambulate. (Id.)

### B. Dr. Javidan

On July 9, 2018, Dr. Pooya Javidan filled out a "Physical Capacities Evaluation" form.[7] (Id. at 803.) She stated that Plaintiff can sit for five hours, stand for two hours, and walk for one hour during an eight-hour day. (Id.) Dr. Javidan also determined that Plaintiff can frequently lift up to ten pounds, occasionally lift up to twenty pounds, never lift more than twenty pounds, and occasionally carry up to twenty pounds, but never carry more than twenty pounds. (Id.) Additionally, she opined that Plaintiff can grasp, push, and pull, perform fine manipulative actions with both hands, and perform "repetitive

---

[7] The ALJ stated in his September 26, 2018 decision that this "document was not made part of the record and ha[d] not been considered by the [ALJ]" because it was submitted after the administrative hearing and after the ALJ closed the record, and without leave to supplement the record. (AR at 82, 90.) This document has since been included in the Administrative Record, and the ALJ specifically discussed it in his November 12, 2020 written decision after remand. (See id. at 27, 29.)

6

movements such as pulling and pushing" with her right, but not with her left foot. (Id.) Additionally, Dr. Javidan wrote that Plaintiff can frequently bend and reach, but cannot squat, crawl, or climb. (Id.) Dr. Javidan also determined that Plaintiff requires a cane to ambulate. (Id.)

## C. Dr. Khan

On October 14, 2016, state agency medical consultant, Dr. A. Khan, filled out a form concerning Plaintiff's residual functional capacity and opined that Plaintiff can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Id. at 66–67.) He also stated that Plaintiff can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, and opined that Plaintiff does not have any manipulative, visual, communicative, and environmental limitations. (Id.) Further, Dr. Khan determined that Plaintiff can perform light work. (Id. at 68.) Dr. Khan also opined that in light of medical improvement, Plaintiff was no longer entitled to receive benefits. (Id.)

## D. Dr. Laiken

On January 31, 2017, state agency medical consultant, Dr. S. Laiken, filled out a form assessing Plaintiff's residual functional capacity. (Id. at 468–75.) He concluded that Plaintiff can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Id. at 469.) Dr. Laiken further stated that Plaintiff can never climb ladders, ropes, and scaffolds, but she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (Id. at 470.) Dr. Laiken also determined that Plaintiff does not have any manipulative, visual, communicative, and environmental limitations. (Id. at 471–72.)

## E. Plaintiff's Testimony During Administrative Hearing

At her October 20, 2020 administrative hearing, Plaintiff testified that she attended junior high school in Mexico and came to the United States in 2002. (Id. at 40.) She further stated that to become a U.S. citizen, she passed a citizenship test, but "with a lot

of difficulty." (Id.) She also testified that she was able to read and understand English, and to write "more than just her name" in English. (Id.) Additionally, Plaintiff testified that she had previously worked as a caregiver, lifting up to eighty pounds, and lifting had always been required in her job. (Id. at 40–41.)

Plaintiff also testified that she used a cane to walk, and explained that she needed a cane because her knees hurt, especially her left knee. (Id. at 41.) Plaintiff stated that she had been prescribed a cane "[n]ine years ago," and she had been using the cane for the last nine years "[a]ll the time." (Id. at 41–42.) When the ALJ asked Plaintiff whether she used a cane when she was working as a caregiver lifting up to 80 pounds in 2011–12, Plaintiff responded that she did not. (Id.)

## VI. DISCUSSION

Plaintiff contends that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians that she requires a cane to ambulate. (J. Mot. at 2–5.) Plaintiff states that her treating physicians, Drs. Javidan and Casillas, opined that she needed a cane to ambulate, but the ALJ assigned the greatest weight to the opinions of state agency medical consultants, Drs. Khan and Laiken, who did not opine that Plaintiff needed a cane. (Id.) Plaintiff argues that the ALJ improperly concluded that Plaintiff had a full range of motion in her legs without restrictions and normal gait. (Id. at 3 (citing AR at 27).) Plaintiff also asserts that although the ALJ correctly noted "no history of falls," Plaintiff did not fall because she was using a cane. (Id.) Plaintiff maintains that the opinions of the reviewing physicians do not constitute substantial evidence, and are therefore not contradictory evidence, and the ALJ's "boilerplate" reasons for rejecting the opinions of her treating physicians do not meet the "clear and convincing" or the "specific and legitimate" standard. (Id. at 5.)

Defendant argues that the ALJ properly discounted the opinions that Plaintiff required a cane to ambulate and provided legally valid reasons supported by substantial evidence to discount such opinions. (Id. at 6–8.) Defendant asserts that the opinions of Drs. Javidan and Casillas that Plaintiff needed to use a cane were contradicted by state

agency medical consultants, Drs. Khan and Laiken, who did not find that a cane was necessary.  (Id. at 6.)  Defendant further contends that the ALJ property concluded that the objective medical evidence did not corroborate Drs. Javidan's and Casillas's conclusions regarding Plaintiff's purported need for a cane to ambulate, and Plaintiff's lack of history of falls supports that conclusion.  (Id. at 6–7.)  Defendant also states that the ALJ noted in his written decision that imaging of Plaintiff's knee showed only mild to moderate findings, and reasonably concluded that Dr. Casillas gave too much consideration to Plaintiff's subjective symptom complaints.  (Id. at 7.)

## A.   Applicable Law

Under the regulations governing claims filed before March 27, 2017, such as the claim in this case,[8] "[o]pinions from treating physicians receive more weight than opinions from examining physicians, and opinions from examining physicians receive more weight than opinions from non-examining physicians."  Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022) (citation omitted).  The opinion of a treating physician is given more weight than opinions of physicians who do not treat the claimant because treating physicians have a greater opportunity to know and observe the claimant.  See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 404.1527(c)(1).

If the treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Farlow, 53 F.4th at 488; Turner, 613 F. 3d at 1222.  If the treating physician's

---

[8] The rule giving deference to a claimant's treating physician does not apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 416.920c(a) (providing that under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources.").  Instead, certain factors are to be considered in evaluating the record.  See 20 C.F.R. § 416.920c(b)–(c).  In this case, Plaintiff filed her application for disability insurance benefits before March 27, 2017, and the changes to the treating physician rule therefore do not apply in this case.

opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Turner, 613 F. 3d at 1222. To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] [his] interpretation thereof, and mak[e] findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quotation omitted) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Similarly, an examining physician's opinion must be given greater weight than the opinion of a non-examining physician, and even if the opinion of an examining physician is contradicted by another doctor, it "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Perez v. Saul, 855 F. App'x 365, 366 (9th Cir. 2021) (citation omitted). Further, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." Maye v. Kijakazi, Case No.: 22CV1326-BLM, 2023 WL 4364890, at *3 (S.D. Cal. July 5, 2023) (quoting Townsend v. Colvin, No. SACV 13–402–JEM, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013)).

Controlling weight is given to a treating source's medical opinion if it is "well-supported by medically acceptable and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion is not "well supported" or is inconsistent with other substantial evidence in the record, factors including the length of the treatment relationship, the nature of the treatment relationship, supportability, consistency, specialization, and other factors will be considered. Id. at § 404.1527(c)(2) (i–6).

B. **Analysis**

Plaintiff's treating physicians, Drs. Javidan and Casillas, opined that Plaintiff required a cane to ambulate. (AR at 801, 803.) The state agency medical consultants, Drs. Khan and Laiken, did not find that Plaintiff needed to use a cane for ambulation. (See id. at 66–67, 468–75.) Because the opinions of Plaintiff's treating physicians were contradicted by the opinions of agency medical consultants, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount the opinions of Drs. Javidan and Casillas. See Turner, 613 F. 3d at 1222 (providing that if the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so).

The ALJ stated the following in his written decision:

The undersigned gives minimal weight to the opinion of Dr. Casillas because the doctor appeared to have given too much consideration to the claimant's subjective complaints and his opinion was not supported by the medical record, including his own treatment notes and findings. The records of Dr. Casillas show a normal objective examination on June 18, 2018 with normal gait.

A physical capacities evaluation was completed by Javidan Pooya, M.D., on July 9, 2018. Dr. Pooya opined that the claimant could only sit five hours in an eight-hour workday; stand two hours in an eight-hour workday; and walk one hour in an eight-hour workday. She could lift and carry up to 20 pounds occasionally and lift up to ten pounds frequently; could use hands for repetitive actions such as simple grasping, push/pull arm controls, and fine manipulation. She could use only right foot for repetitive movements such as pull/push of foot controls; frequently bend and reach; and occasionally squat, crawl and climb. She had moderate restriction to unprotected heights, and she required a cane to ambulate (Exhibit CDR-11F). The undersigned gives the opinion of Dr. Pooya mini[m]al [sic] weight, as it was not supported by the evidence as a whole, including the newer physical examinations that were within normal limits and did not include any allegations of falls (Exhibits CDR-12F pp. 55, 101, 103, and 129).

(AR at 27.) The ALJ further stated that he discounted the opinions of Drs. Javidan and Casillas that Plaintiff required a cane to ambulate because those opinions "were unsupported by the medical records including minimal findings and examinations showing full range of motion of the legs without restriction, no history of falls and normal gait (Exhibit CDR-12F; CDR-9F p. 111)." (Id.)

The ALJ specified in his written decision that he discounted the opinions of Plaintiff's treating physicians, Drs. Javidan and Casillas, regarding Plaintiff's need to use a cane to ambulate, and concluded that those opinions were inconsistent with medical records showing that Plaintiff had full range of motion in her legs without restriction, no history of falls, and normal gait. (See id.) The exhibits the ALJ cited in support of his conclusion contain progress notes from Dr. Silva at Kaiser Permanente dated June 11, 2018, through June 13, 2019. (See id. (citing exhibit "12F" [AR at 804–18]).) Those records contain notes documenting various medication prescriptions and refills, blood pressure measurements, blood work results, and "headache" and "anxiety" diagnoses, and note that Plaintiff did not report any falls. (See id.) The ALJ's other citation references Dr. Casillas's appointment notes from June 8, 2018,[9] stating that Plaintiff was evaluated for a possible concussion and her physical examination revealed "normal" gait. (See id. (citing exhibit "9F" at 111 [AR at 772].)

Although the ALJ cited one finding of normal gait, (see id.), he disregarded multiple medical records documenting findings of "antalgic" gait and difficulties that Plaintiff experienced with ambulation, (see e.g., id. at 439–40 (emphases added) (containing Dr. Javidan's November 18, 2016 appointment notes that Plaintiff's musculoskeletal examination was positive for gait "disturbance, bilateral knee joint pain, bilateral knee joint stiffness, knee joint swelling, [and] muscle pain"; also noting antalgic

---

[9] It appears that the ALJ misstated the date of the examination by referencing June 18, 2018. (See AR at 27.)

gait, "decreased stance phase on bilateral knee"); id. at 431–33 (containing a progress note dated January 10, 2017, from Patricia Rodriguez, P.T.A., that Plaintiff had "[r]ight knee pain affecting ability to walk," her knee had "pain, instability, stiffness and swelling," and her gait was "antalgic")). Further, the notes the ALJ cited also document consistent reports of pain that Plaintiff experienced while standing or walking. (See id. at 904, 906 (containing Dr. Silva's March 27, 2019 progress notes that Plaintiff "ha[d] pain with . . . prolonged standing and walking," and her musculoskeletal was "[p]ositive for joint pain"); id. at 932 (containing Dr. Silva's April 2019 progress note that Plaintiff's musculoskeletal exam was "[p]ositive for joint pain and myalgias").)

Notably, the ALJ did not discuss Plaintiff's medical records, including the May 17, 2018 treatment notes from Dr. Harrison and June 4, 2018 treatment notes from Dr. Javidan, which the Appeals Council specifically cited when remanding the case to the ALJ, documenting that Plaintiff was prescribed and used a cane. (Id. at 97 (containing the Appeal's Council's decision remanding the case to the ALJ); id. at 708 (emphasis added) (containing Dr. Harrison's May 17, 2018 treatment note that Plaintiff "uses a walking cane"); id. at 736–38 (emphasis added) (containing Dr. Javidan's June 4, 2018 appointment note that Plaintiff had "bilateral knee osteoarthritis," her treatment plan included "[p]hysical therapy to maintain range of motion and muscle strengthening," and Plaintiff required to use "[a]ssistive devices including a cane or a walker"); see also id. at 376–77, 396–97 (emphasis added) (containing progress notes from Dr. Noemi Vazquez dated May 24, 2016, stating that Plaintiff had right knee joint pain, requested a cane, was "referred to physical therapy for knee," and was prescribed a "cane, adjustable or fixed, with tip").) Additionally, as Plaintiff points out, she did not report or experience any falls *because* she was using a cane to ambulate. (See J. Mot. at 3.) The ALJ's selective citations and conclusory findings did not sufficiently explain why the opinions of two of Plaintiff's treating physicians that she requires a cane to ambulate were entitled to less weight. See Tommasetti, 533 F.3d at 1041 (providing that the ALJ is required to set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e]

[his] interpretation thereof, and mak[e] findings."); Orn, 495 F.3d at 632 (requiring the ALJ to "set forth his own interpretations and explain why they, rather than the [treating physician's], are correct").

To the extent the ALJ relied on the findings of non-examining, non-treating agency physicians, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Maye, 2023 WL 4364890, at *3. Further, the opinions of the two non-treating physicians, Drs. Khan and Laiken, who did not opine that Plaintiff requires a cane to ambulate, predated the opinions of Plaintiff's treating physicians who assessed that limitation by more than a year. (See AR at 66–67, 268–75, 801, 803.) Additionally, the ALJ did not mention the factors listed in 20 C.F.R. § 404.1527(c)(2), and did not indicate that he considered them in his decision to discount the opinions of Drs. Javidan and Casillas. See 20 C.F.R. § 404.1527(c)(2); Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017) (providing that the ALJ's failure to "consider factors such as length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship or the supportability of the opinion . . . constitutes reversible legal error"). Accordingly, the ALJ's finding does not set forth the requisite specific and legitimate reasons that are supported by substantial evidence for discounting the opinions of Drs. Javidan and Casillas that Plaintiff requires a cane to ambulate.

## C. Harmless Error

Although the ALJ erred by discounting the opinions of Plaintiff's treating physicians that Plaintiff requires a cane to ambulate, as discussed below, the error is harmless and does warrant remand. At step five of the disability analysis, the Commissioner has the burden to establish the existence of other work in the national economy that a claimant can perform. See Pinto v. Massanari, 249 F.3d 840, 844 (9th 2001) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). To meet this burden, the Commissioner is required to "identify specific jobs existing in substantial numbers in the

national economy that [a] claimant can perform despite [her] identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).  The ALJ assesses a claimant's "residual functional capacity" and considers potential occupations that the claimant may be able to perform. Id. at 845 (citing 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 416.966).  The ALJ relies on the Dictionary of Occupational Titles ("DOT") and the testimony of a VE regarding specific occupations that a claimant can perform in light of his or her RFC.  Id. at 845–46 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. §§ 416.969, 416.966(d)(1), (e)). The ALJ then determines "whether, given the claimant's [RFC], age, education, and work experience, [the claimant] actually can find some work in the national economy." Id. at 846 (citing Valentine, 574 F.3d at 689; 20 C.F.R. § 416.920(g)).

During Plaintiff's administrative hearing, the VE testified that a hypothetical individual with Plaintiff's RFC would be able to perform the jobs of a cashier (DOT 211.462-010), with 846,300 jobs available nationally; marker (DOT 209.587-034), with 291,900 jobs nationally; and produce weigher (DOT 299.587-010), with 13,500 jobs. (AR at 44.)  Plaintiff's attorney then asked the VE whether there would be any available jobs for a hypothetical person with Plaintiff's RFC, who was also required to use a cane "at all times for standing and/or walking." (Id. at 45.)  The VE responded that a position of a "cashier self-service" would still be available, but the cane use limitation would erode the number of available jobs by fifty percent.  (Id.)  The VE further testified that the additional limitation to use a cane for standing and/or walking would eliminate the marker and produce weigher positions.  (Id.)  The ALJ ultimately found that Plaintiff was not able to perform her past relevant work as a home healthcare aide (DOT 354.377-014), but Plaintiff was able to perform the occupations of a "cashier (DOT 211.462-010), light in exertion, SVP2, unskilled, with 846,300 jobs in the national economy"; "marker (DOT 209.587-034), light in exertion, SVP2, unskilled, with 291,000 jobs in the national

economy"; and "produce weigher (DOT 299.587-010), light in exertion, SVP1, unskilled, with 13,500 jobs in the national economy." (Id. at 27–29.)

As an initial matter, the DOT's description of a cashier position does not require prolonged standing and/or walking. See DOT 211.462-010, 1991 WL 671840.[10] Further, according to the VE testimony, an additional limitation of using a cane for ambulation would not eliminate the position of a cashier, but would limit the number of available jobs by fifty percent. (See id.) The ALJ relied on the VE's testimony and concluded that Plaintiff could perform the duties of a cashier, with 846,300 available jobs. (Id. at 29.) Half of that number equals 423,150, which still constitutes a "significant number of jobs in the national economy." See 42 U.S.C. § 423(d)(2)(A) (providing that "work which exists in the national economy" means "work which exists in significant numbers either

---

[10] The position of a cashier (DOT 211.462-010) is defined as follows:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).

DOT 211.462-010, 1991 WL 671840.

1 in the region where such individual lives or in several regions of the country"); see also
2 Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (finding that the VE's testimony that
3 there were 7,700 regional and 125,000 national jobs available "was substantial evidence
4 to support the finding of the ALJ that [claimant] was not disabled); Moncada v. Chater,
5 60 F.3d 521, 524 (9th Cir. 1995) (finding that 64,000 jobs nationwide constituted a
6 "significant number . . . to meet the requirements of 42 U.S.C. § 423(d)(2)(A)"); Maye,
7 2023 WL 4364890, at *7 (finding that a "significant number" of jobs was still available
8 "even with the erosion of jobs," where the VE testified that an additional restriction to
9 use a cane or assistive device would result in "seventy-five percent erosion of the
10 150,000 Assembler jobs, 100,000 Semiconductor Loader jobs, and 75,000 Final
11 Assembler jobs").

12 Because the ALJ found at step five of the sequential evaluation process that
13 Plaintiff could perform a job of a cashier, and the additional limitation of using a cane to
14 ambulate would still leave a "significant number" of cashier jobs available in the national
15 economy, the ALJ's error in discounting the opinions of Drs. Javidan and Casillas that
16 Plaintiff requires a cane to ambulate is "inconsequential" to the ALJ's ultimate
17 nondisability determination. Accordingly, the ALJ's error was harmless. See Rounds v.
18 Comm'r Soc. Sec. Admin., 807 F.3d 996, 1007 (9th Cir. 2015) (finding that the ALJ's
19 error was harmless because it was "inconsequential to the ultimate nondisability
20 determination."); Tommasetti, 533 F.3d at 1038 (internal quotation marks and citation
21 omitted) ("[H]armless error . . . exists when it is clear from the record that the ALJ's error
22 was inconsequential to the ultimate nondisability determination."); Parra v. Astrue, 481
23 F.3d 742, 747 (9th Cir. 2007) (providing that the ALJ's error that does not affect the
24 ultimate result is harmless); see also Maye, 2023 WL 4364890, at *7 (finding that the
25 ALJ's error in disregarding a treating physician's opinion that plaintiff required to use a
26 cane or assistive device to stand or walk was harmless, where the ALJ determined that
27 there was a "significant number of jobs available in the national economy whether or not
28

the [p]laintiff needed to use a cane to ambulate" and some evidence supported the ALJ's decision). The Court therefore finds that reversal is not warranted.

## VII. CONCLUSION AND ORDER

For the reasons stated above, the Court finds that although the ALJ erred in discounting the opinions of Plaintiff's treating physicians, Drs. Javidan and Casillas, that Plaintiff requires a cane to ambulate, the error was harmless. The Court therefore **ORDERS** that judgment be entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and dismissing this case.

**IT IS SO ORDERED.**

Dated: September 14, 2023

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge